OPINION
{¶ 1} Appellant, Germaine D. Clark, appeals the May 30, 2002 judgment entry of the Ashtabula County Court of Common Pleas, in which he was sentenced for his conviction for assaulting a police officer.
 {¶ 2} On October 12, 2001, the Ashtabula County Grand Jury indicted appellant on one count of tampering with evidence, a felony of the third degree, in violation of R.C. 2921.12, and one count of assault on a peace officer, a felony of the fourth degree, in violation of R.C. 2903.13. On February 26, 2002, appellant entered a plea of not guilty to the charges. A bench trial took place on May 22, 2002.
 {¶ 3} At the trial, Officer George Taylor Cleveland ("Officer Cleveland") of the Ashtabula City Police Department took the stand and related that on July 17, 2001, at about 10:00 p.m., while he was on patrol, he received several citizen complaints concerning drug trafficking in the vicinity of West 39th Street, an area known for criminal activity. When he arrived at West 39th Street, he observed an automobile parked in the middle of the roadway and noticed an individual standing on the passenger side of the car with the door open. As he got closer, he recognized the individual to be appellant. As Officer Cleveland's cruiser approached the motor vehicle, appellant quickly entered the car. The driver of the car, Tia Blenman ("Blenman"), "then drove away very quickly." Officer Cleveland activated his overhead lights and initiated a traffic stop.
 {¶ 4} As Officer Cleveland advanced toward the car and shined his spotlight into the window, he noticed appellant making "a lot of unusual, erratic and furtive gestures. He was reaching behind the driver's seat, he was reaching under his seat, he was turning the side, he was looking back." Officer Cleveland testified that Blenman, the driver of the car, was very still, holding the steering wheel, and not making any movements. According to Officer Cleveland, there was a lot of movement on appellant's part, which made him concerned for his safety. He proceeded to ask appellant to exit the vehicle because he did not know whether appellant was trying to conceal drugs or obtain a weapon.
 {¶ 5} Appellant, who appeared very agitated to Officer Cleveland, opened the door and exited the vehicle. As the two were conversing, Officer Cleveland noticed that appellant "was speaking * * * like he had a mouthful of food. He * * * wasn't opening his mouth and enunciating his words like normal individuals do when they [are] talked to." According to Officer Cleveland, based on his training, it was common for people to hide drugs in their mouth. So, he asked appellant to open his mouth, but he responded by hitting Officer Cleveland in the chest "with the heels of both hands." As a result, Officer Cleveland testified that it hurt and caused him to be knocked backwards. However, he stated that he was not treated for any injuries, nor did he miss any time from work. After Officer Cleveland regained his balance, he was eventually able to detain appellant after a brief struggle. Appellant was then placed in the rear of the police cruiser.
 {¶ 6} Officer Cleveland then proceeded to interview Blenman.[1]
Blenman gave Officer Cleveland consent to search the car. He found a plastic bag that was in two parts behind the driver's seat. According to Officer Cleveland, Blenman also told him that she thought appellant put marijuana in his mouth. The state rested after the testimony of Officer Cleveland, and appellant moved for a Crim.R. 29 motion for acquittal pertaining particularly to the tampering with evidence charge, which the trial court overruled.
 {¶ 7} Blenman took the stand on appellant's behalf and revealed that when Officer Cleveland approached the passenger side of the car, appellant rolled down his window, and Officer Cleveland asked him to exit the auto. However, Blenman did not witness "the struggle" between Officer Cleveland and appellant because she was in the car, but she recalled that both of them were on the ground at some point. She further testified that she did not see appellant put anything in his mouth.
 {¶ 8} Appellant then testified on his own behalf and stated that when Officer Cleveland came to the passenger side door of the car, he knocked on the window. Appellant rolled down the window and according to appellant, he asked Officer Cleveland, "why you messing with me * * * I ain't did nothing. I'm not messing with you." Appellant stated that Officer Cleveland's reply was "I'm messing with you, now get the fuck out [of] the car." Appellant explained that Officer Cleveland told him to put his hands up on the car and "[y]oked [him] up" and "threw [him] straight to the ground with his knee in [appellant's] back."
 {¶ 9} Appellant's attorney renewed the Crim.R. 29 motion, which the trial court overruled. The trial court found appellant guilty of the offense of assaulting a police officer and not guilty of tampering with evidence. In an entry dated May 30, 2002, the trial court sentenced appellant to a term of twelve months at the Lorain Correctional Institution. Appellant filed the instant appeal and now assigns the following as error:
 {¶ 10} "[1.] The trial court erred in finding [appellant] guilty of assault on a police officer as there was insufficient evidence to support the bench trial decision[.]
 {¶ 11} "[2.] [Appellant] was denied the effective assistance of counsel as guaranteed by the Sixth and Fourteenth Amendments to the [United States] Constitution and Article I, Section X of the Ohio Constitution[.]"
 {¶ 12} Under the first assignment of error, appellant asserts that there was insufficient evidence to support the trial court's decision finding him guilty of assault on a police officer. He also alleges that his conviction for assault on a police officer was against the manifest weight of the evidence.
 {¶ 13} In State v. Schlee (Dec. 23, 1994), 11th Dist. No. 93-L-082, 1994 WL 738452, at 4-5, this court stated:
 {¶ 14} "`"(* * *) (T)he test (for sufficiency of the evidence) is whether after viewing the probative evidence and the inference[s] drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all of the elements of the offense beyond a reasonable doubt. The claim of insufficient evidence invokes an inquiryabout due process. It raises a question of law, the resolution of whichdoes not allow the court to weigh the evidence. * * *"'
 {¶ 15} "In other words, the standard to be applied on a question concerning sufficiency is: when viewing the evidence `in a light most favorable to the prosecution,' * * * `(a) reviewing court (should) not reverse a jury verdict where there is substantial evidence upon which the jury could reasonably conclude that all of the elements of an offense have been proven beyond a reasonable doubt.' * * *." (Emphasis sic.) (Citations omitted.)
 {¶ 16} An appellate court must look to the evidence presented to determine if the state offered evidence on each statutory element of the offense, so that a rational trier of fact may infer that the offense was committed beyond a reasonable doubt. State v. March (July 16, 1999), 11th Dist. No. 98-L-065, 1999 WL 535675, at 3. The evidence is to be viewed in a light most favorable to the prosecution when conducting this inquiry.State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. Furthermore, the verdict will not be disturbed on appeal unless the reviewing court finds that reasonable minds could not have arrived at the conclusion reached by the trier of fact. State v. Dennis (1997),79 Ohio St.3d 421, 430.
 {¶ 17} Applying this standard to the matter at hand, the state was required to present sufficient evidence to establish that appellant committed the offense of assault on a police officer, pursuant to R.C.2903.13(A), which states that "[n]o person shall knowingly cause or attempt to cause physical harm to another * * *." According to R.C.2901.22(B), "[a] person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature." Hence, the state needed to present sufficient evidence that appellant knowingly caused or attempted to cause physical harm to another.
 {¶ 18} In the case at hand, the state presented the testimony of Officer Cleveland, in which he stated that he was patrolling a high crime area in Ashtabula, when he noticed the car Blenman was driving because it was parked in the middle of the roadway. As Officer Cleveland approached the vehicle, he noticed a lot of movement on appellant's part, which made him concerned for his safety. He maintained that appellant, who seemed very agitated, exited the automobile. Because of the way appellant was speaking, Officer Cleveland believed that based on his training, he could have been hiding drugs in his mouth. When Officer Cleveland asked appellant to open his mouth, appellant responded by hitting Officer Cleveland in the chest. Officer Cleveland testified that the blow caused him to be knocked backwards and he stated that he was hurt. Hence, based on the foregoing, there was sufficient evidence presented at trial which, when viewed in the light most favorable to the prosecution, demonstrates that appellant committed an assault on a police officer.
 {¶ 19} Appellant also argues that the verdict was against the manifest weight of the evidence. Though the evidence may have been sufficient to sustain a guilty verdict, the issue of manifest weight requires a different type of analysis. Schlee, supra, at 5. When addressing whether a verdict is against the manifest weight of the evidence, a reviewing court examines "`the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. * * *'" State v. Davis (1988), 49 Ohio App.3d 109, 113. A judgment of the trial court should be reversed as being against the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." State v. Thompkins (1997),78 Ohio St.3d 380, 387.
 {¶ 20} In the case at bar, appellant was convicted of assault on a police officer, which the state proved. It is within the discretion of the trier of fact to determine the credibility of witnesses and the weight to be given to their testimony. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. Here, the trier of fact must have found the state's witnesses to be more credible.
 {¶ 21} It is our view that it was reasonable for the trier of fact to determine that when appellant hit Officer Cleveland in the chest he was aware that physical injury could result. In addition, appellant should have known that pushing Officer Cleveland with both hands in his chest could have caused physical harm to Officer Cleveland Further, based on the record before us, it is apparent that appellant attempted to cause physical harm to Officer Cleveland even if he did not receive any medical treatment. Hence, we cannot conclude that the trier of fact lost its way in finding that appellant knowingly attempted to cause physical harm to the peace officer. After reviewing the record and weighing the evidence and all reasonable inferences, it is our position that the judgment of the trial court was supported by competent, credible evidence. The conviction for assaulting a peace officer was not against the manifest weight of the evidence, and thus, was sufficient as a matter of law. Appellant's first assignment of error lacks merit.
 {¶ 22} In his second assignment of error, appellant claims he received ineffective assistance of counsel because his trial counsel failed to file a motion to suppress the evidence and because his trial attorney admitted evidence of his other bad acts.
 {¶ 23} To warrant a reversal on the grounds that an appellant was not provided with effective assistance of counsel, an appellant bears the burden of meeting the two-prong test set forth in Strickland v.Washington (1984), 466 U.S. 668, 687, which states:
 {¶ 24} "[a] convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction * * * has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction * * * resulted from a breakdown in the adversary process that renders the result unreliable."
 {¶ 25} In order to determine if an attorney's performance was deficient, the trial court must inquire whether the attorney provided "reasonably effective assistance, considering all the circumstances."State v. Loza, 71 Ohio St.3d 61, 83, 1994-Ohio-409 and 410, citingStrickland, supra at 687. "A Sixth Amendment violation does not occur `unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance.' * * *" State v. Goodwin,84 Ohio St.3d 331, 334, 1999-Ohio-356, quoting State v. Bradley (1989),42 Ohio St.3d 136, 142.
 {¶ 26} Under the second prong of the Strickland test, appellant must show that he was prejudiced. To establish prejudice, appellant must prove that "there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different."Bradley, 42 Ohio St.3d at paragraph three of the syllabus; State v.Stojetz, 84 Ohio St.3d 452, 457, 1999-Ohio-464. "A reasonable probability is a probability sufficient to undermine confidence in the outcome."State v. Bays, 87 Ohio St.3d 15, 27, 1999-Ohio-216. See, also, State v.Brant (Aug. 4, 2000), 11th Dist. No. 99-P-0037, 2000 WL 1114845, at 9.
 {¶ 27} In addition, a properly licensed attorney is presumed to be competent, and therefore, judicial scrutiny of his or her performance must be highly deferential. Strickland, 466 U.S. at 689. An attorney's strategic decisions and trial tactics will not support a claim of ineffective assistance. State v. Clayton (1980), 62 Ohio St.2d 45,48-49. Specific to the facts of this case, a criminal defendant's constitutional right to effective assistance of counsel does not require an attorney to file a motion to suppress in every case. State v.Madrigal, 87 Ohio St.3d 378, 389, 2000-Ohio-448. Instead, "where there exist[s] reasonable grounds for filing a motion to suppress, counsel's failure to file the motion may constitute ineffective assistance and warrant reversal." (Emphasis added.) State v. Payton (1997),119 Ohio App.3d 694, 704.
 {¶ 28} To prove that his attorney was ineffective for failing to file a motion to suppress, appellant must point to instances in the record showing that there was a reasonable probability that but for the failure to file the motion, the result of the proceeding would have been different. State v. Lott (Dec. 26, 1997), 11th Dist. No. 96-A-0011, 1997 WL 799426, at 3.
{¶ 29} In the case at hand, appellant claims that his trial counsel failed to file a motion to suppress. Specifically, appellant asserts that his attorney should have filed a motion to suppress to challenge whether Officer Cleveland had reasonable suspicion to initiate a stop of the car, in which appellant was a passenger. However, since Blenman's car was in the middle of the roadway and blocking the movement of traffic in violation of R.C. 4511.22, Officer Cleveland was justified in stopping the auto. It is our position that appellant has failed to demonstrate that his trial attorney's performance was deficient by failing to file a motion to suppress.
{¶ 30} Furthermore, "`[w]here the record contains no evidence which would justify the filing of a motion to suppress, the appellant has not met his burden of proving that his attorney violated an essential duty by failing to file the motion.'" State v. Tibbetts (2001), 92 Ohio St.3d 146,166, quoting State v. Gibson (1980), 69 Ohio App.2d 91, 95. Here, appellant was not prejudiced because he failed to demonstrate that there was a reasonable probability that the trial court would have granted his motion to suppress if one had been filed.
 {¶ 31} Appellant also argues that his trial counsel was ineffective because his attorney admitted evidence of his other bad acts on direct examination. Appellant's attorney questioned appellant during direct examination as to his guilty pleas to attempted trafficking in drugs in 1993, drug abuse in 1995, attempted felonious assault in 1997, possession of drugs in 2000, and possession of cocaine in 2000. However, these prior convictions go to the credibility of appellant and are not substantive evidence of bad acts.
 {¶ 32} Furthermore, even if appellant's attorney would not have questioned appellant about these convictions, the state would probably have adduced the evidence on cross-examination by way of impeachment evidence. Appellant's trial counsel's strategic decisions and trial tactics will not support a claim of ineffective assistance. Therefore, appellant has not established that his counsel's performance was deficient by admitting evidence of the other bad acts. Further, even if appellant's defense counsel's performance was deficient in some manner, appellant did not demonstrate that the outcome of the trial would have been different, nor did he prove that he was prejudiced in any way. We conclude that our review of the record does not disclose any conduct that violated appellant's Sixth Amendment right to effective assistance of counsel. Thus, counsel's performance did not fall below the objective standard of reasonableness. Appellant's second assignment of error is without merit.
 {¶ 33} For the foregoing reasons, appellant's assignments of error are not well-taken. The judgment of the Ashtabula County Court of Common Pleas is affirmed.
Judgment affirmed.
William M. O'Neill and Diane V. Grendell, J., concur.
[1] On cross-examination, it was revealed that Blenman was never issued a citation. Officer Cleveland stated that he never issued Blenman a citation because he "thought the assault on [him] and the felonies that [appellant] was arrested for [and] the fact that he needed to be seen in the emergency room fairly soon, outweighed writing a traffic citation."