[Cite as *Cleveland Hts. v. Jackson*, 2024-Ohio-472.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

CITY OF CLEVELAND HEIGHTS, :

    Plaintiff-Appellee, :

                               No. 112278

    v. :

DEREK JACKSON, :

    Defendant-Appellant. :

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** February 8, 2024

Criminal Appeal from the Cleveland Heights Municipal Court
Case No. TRC2201211

### *Appearances:*

William R. Hanna, Cleveland Heights Director of Law, and Pamela L. Roessner, Prosecutor, *for appellee.*

Cullen Sweeney, Cuyahoga County Public Defender, and Michael V. Wilhelm, Assistant Public Defender, *for appellant.*

SEAN C. GALLAGHER, J.:

{¶ 1} Derek Jackson appeals his convictions for operating a vehicle while intoxicated ("OVI") and impeding traffic. For the following reasons, we affirm.

{¶ 2} In the early morning hours on the day of the incident, police officers sitting in their cruiser while parked in a church parking lot at Cedar Road and Coventry Road in the city of Cleveland Heights were approached by an anonymous passerby. The person reported that there was a driver stopped at the intersection of Coventry Road and Fairmount Boulevard who appeared to be asleep at the wheel of his vehicle. The passerby reported the car had been there for several cycles of the traffic light.

{¶ 3} The officers radioed dispatch requesting support. That was standard protocol for this situation because in their experience, if a driver is asleep at the wheel and is startled awake, the driver has a tendency to hit the gas pedal. A second car boxing the suspect's vehicle prevents the vehicle from jumping into traffic or the officers. Before support arrived, the officers proceeded to investigate the passerby's report.

{¶ 4} The two officers were the first to arrive on scene, and they pulled behind Jackson's vehicle, which was not moving despite the traffic-control light cycling. There was not much traffic at the time, and the officers noticed the traffic light cycle at least two times as they waited behind Jackson's vehicle. Once support arrived and was able to box Jackson's vehicle between the two patrol cars, one of the officers approached the driver's side of the vehicle and opened the door.

{¶ 5} Jackson immediately awoke to the door opening, apparently not noticing the police cars boxing him in, but was unable to provide any information beyond telling the officer where he was coming from. When asked where he was

going, after a slight hesitation, Jackson stated he was going home. Jackson could not relay immediately what his home address was, stating at first 916 Cleveland Heights, then 1016 Cleveland Heights, 44120. Only after the officers asked did Jackson give a street name rather than the city. One of the officers observed that Jackson's eyes were glossy, some of his speech was slurred, and the officer also smelled the odor of alcohol emanating from Jackson's breath.

{¶ 6} Because Jackson was asleep at the wheel and seemed disoriented when the officer asked questions, the officers asked Jackson to step out of the vehicle to perform standardized field sobriety tests.[1] During the tests, displayed to the jury, Jackson was visibly unstable on his feet, could not walk a straight line, and lost his balance more than once. Jackson refused to take the breath test. He was arrested and cited for OVI, in violation of R.C. 4511.19(A)(1)(a), and impeding or blocking the flow of traffic, in violation of Cleveland Heights Codified Ordinances ("CHCO") 333.04.

{¶ 7} At the conclusion of testimony, the jury found Jackson guilty of both offenses. The municipal court sentenced Jackson to a one-year term of community control, including a one-year suspension of his driver license. Jackson appeals, advancing three assignments of error, which have been consolidated for the ease of

---

[1] Jackson filed a motion to suppress evidence. The trial court found that the officer performing the field sobriety test did not substantially comply with National Highway Traffic Safety Administration guidelines when conducting the horizontal gaze nystagmus test and excluded it from evidence. The court deemed evidence of the remaining tests admissible and determined there was probable cause to arrest Jackson. Neither party has challenged that ruling in this appeal.

discussion. Jackson argues: (1) that his conviction for blocking traffic was not based on sufficient evidence; and (2) that both his convictions were against the weight of the evidence. Neither argument has merit.

{¶ 8} A challenge to the sufficiency of the evidence questions whether the state met its burden of production. *State v. Hunter*, 8th Dist. Cuyahoga No. 86048, 2006-Ohio-20, ¶ 41, citing *State v. Thompkins*, 78 Ohio St.3d 380, 390, 678 N.E.2d 541 (1997). Sufficiency of the evidence involves a review of the evidence admitted at trial and a determination of "'whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt.'" *State v. Goins*, 8th Dist. Cuyahoga No. 109497, 2021-Ohio-1299, ¶ 13, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. Under this standard, the appellate court must determine, "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.*

{¶ 9} Jackson was cited for violating CHCO 333.04, which states:

> No person shall stop or operate a vehicle at such an unreasonably slow speed as to impede or block the normal and reasonable movement of traffic, except when stopping or reduced speed is necessary for safe operation or to comply with the law.

CHCO 333.04(a). No one disputes that a vehicle stopped in the lane of traffic constitutes an "unreasonably slow speed." Thus, in order for Jackson to be convicted of this offense, the city needed to prove, beyond a reasonable doubt, that Jackson stopped his vehicle such that it impeded or blocked the normal and

reasonable movement of traffic. Importantly, Jackson does not discuss nor dispel the notion that the responding officers arriving in their police cruiser constituted "traffic" as contemplated under the ordinance.

{¶ 10} Instead, Jackson argues, in his appellate briefing, that the evidence was insufficient because it did not establish that his conduct impeded or blocked the normal and reasonable movement of traffic because the incident occurred just past midnight and "there *were no vehicles* present" for his vehicle to impede or block. (Emphasis added.) Jackson, however, ignores the undisputed fact that there was at least one vehicle impeded by Jackson's being passed out behind the wheel — the vehicle of the first responding officers who approached the intersection. Those responding officers arrived to investigate whether there was a reasonable articulable suspicion of criminal activity to warrant detaining Jackson for investigatory purposes based on the anonymous tip they had just received.

{¶ 11} At that point in time, the responding officers were no different than any other motorists on the road. They had received an anonymous tip regarding a possible motor-vehicle infraction, but that tip in and of itself would not ordinarily have justified stopping or detaining Jackson. *See Maumee v. Weisner*, 87 Ohio St.3d 295, 300, 720 N.E.2d 507 (1999), citing *Alabama v. White*, 496 U.S. 325, 329, 110 S.Ct. 2412, 110 L.Ed.2d 301 ("[A]n anonymous tip alone seldom demonstrates the informant's basis of knowledge or veracity inasmuch as ordinary citizens generally do not provide extensive recitations of the basis of their everyday observations."). The officers themselves had to witness something, and upon

arriving, they witnessed Jackson blocking them from normally travelling through the intersection in the proper lane of travel.

{¶ 12} In addressing the similar statutory provision under R.C. 4511.22(A), another panel in this district concluded that the trier of fact is "required to consider whether the traffic in the area was moving normally and reasonably and whether the defendant impeded its flow." *Cleveland v. Dawson*, 8th Dist. Cuyahoga No. 71450, 1997 Ohio App. LEXIS 3201, 16 (July 24, 1997). In addition, "[w]hether a police cruiser itself constitutes impeded [or blocked, as the situation may be,] traffic for the purposes of R.C. 4511.22 is a case-by-case, fact-based determination." *State v. Bahen*, 2016-Ohio-7012, 76 N.E.3d 438, ¶ 26 (10th Dist.) (violation of R.C. 4511.22 requires a showing that the motorist impeded or blocked traffic). In this case, the officers expressly testified that Jackson's stopped vehicle blocked them from proceeding through the intersection in their lane of travel due to Jackson's car not moving when the traffic light cycled to green. The officers then waited for backup to arrive after witnessing the infraction first hand.

{¶ 13} In light of the argument presented, Jackson's assignment of error pertaining to the sufficiency of the evidence is overruled. He has not presented any discussion or argument to dispel application of the general proposition that a police officer's cruiser can constitute "traffic" for the purposes of the violation. It is not the role of an appellate court to flush out underdeveloped arguments on behalf of one of the parties. *See State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, 19 N.E.3d 900, ¶ 19, citing *State v. Bodyke*, 126 Ohio St.3d 266, 2010-Ohio-2424, 933

N.E.2d 753, ¶ 78 (O'Donnell, J., concurring in part and dissenting in part), quoting *Carducci v. Regan*, 714 F.2d 171, 177 (D.C.Cir.1983). And regardless, the question of whether the officers' vehicle constitutes "traffic" for the purposes of the offense is one left to the finder of fact; we cannot conclude that the conviction for blocking traffic was based on insufficient evidence. Under the sufficiency-of-the-evidence standard, we must accept all reasonable inferences in favor of the state, which on this point demonstrates that the officers' vehicle was blocked by Jackson who was asleep at the wheel, preventing the officers from travelling through the intersection in their lane of travel.

{¶ 14} And finally, in the remaining two assignments of error, Jackson argues that his convictions for the OVI and impeding traffic were against the weight of the evidence.

{¶ 15} "'[W]eight of the evidence involves the inclination of the greater amount of credible evidence.'" *State v. Harris*, 8th Dist. Cuyahoga No. 109060, 2021-Ohio-856, ¶ 32, quoting *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541. Weight of the evidence relates to "'the evidence's effect of inducing belief.'" *Id.*, quoting *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25, citing *Thompkins* at 386-387. The reviewing court must consider all of the evidence in the record, the reasonable inferences made from it, and the credibility of the witnesses to determine "'whether in resolving conflicts in the evidence, the factfinder clearly lost its way and created such a manifest miscarriage of justice that

the conviction must be reversed and a new trial ordered.'" *Id.*, citing *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 485 N.E.2d 717 (1st Dist.1983).

{¶ 16} In addition to the impeding traffic conviction already discussed, Jackson was convicted of violating R.C. 4511.19(A)(1)(a), which provides in pertinent part that "[n]o person shall operate any vehicle, * * * if, at the time of the operation, * * * [t]he person is under the influence of alcohol, a drug of abuse, or a combination of them." Jackson argues that certain officers testified for the first time at trial that they smelled the odor of alcohol emanating from Jackson, that some of Jackson's conduct could be attributed to waking up surrounded by police officers, that his performance on the field sobriety tests were unremarkable, and that he was told that it was up to him whether to take the breath test, so his refusal was unremarkable.

{¶ 17} The basis of the stop was the officers' observing Jackson asleep at the wheel for several cycles of a stop light, thereby impeding their travel through the intersection. The first responding officers testified that it took them several minutes to arrive at the intersection, where they found the vehicle in the same position as described by the anonymous source. While waiting for support to arrive, the officers observed the traffic light cycle at least two more times, thereby blocking the lane of traffic and preventing the officers from continuing through the intersection in that lane of travel. The commission of that offense provided probable cause for further investigation into why Jackson was impeding or blocking traffic. *See State v. Percy*, 7th Dist. Mahoning No. 04 MA 265, 2006-Ohio-1285, ¶ 17, citing *Dayton v.*

*Erickson*, 76 Ohio St.3d 3, 9, 665 N.E.2d 1091 (1996); *State v. Brunk*, 5th Dist. Richland No. 2021 CA 0037, 2021-Ohio-4270, ¶ 24; *State v. Clark*, 11th Dist. Ashtabula No. 2002-A-0056, 2003-Ohio-6689, ¶ 29.

{¶ 18} Approximately five more officers arrived at the scene, with a second police vehicle boxing in Jackson's car, to enable an officer to safely approach the vehicle. During all of that commotion, Jackson remained asleep at the wheel. One of the officers could smell the odor of alcohol coming from Jackson's breath, and another could smell the odor of an alcoholic beverage coming from Jackson's person when he conducted the field sobriety tests. When awakened, Jackson seemed alert but provided somewhat disjointed answers to questions. When asked where he was coming from, he repeated "Larchmere" without any further elaboration. When asked his address, he gave the house number and the city, providing the street name only when asked.

{¶ 19} During the field sobriety tests, Jackson was visibly unstable on his feet, stumbling and almost falling several times. An officer walking behind Jackson during the test reached out to assist him when he stumbled, more than once. Finally, Jackson's refusal to take the breath test held demonstrative value. The refusal to take a reliable chemical test for intoxication when one is accused of intoxication is probative on the question of whether he was intoxicated at the time of the refusal. *State v. Griesheimer*, 10th Dist. Franklin No. 05AP-1039, 2007-Ohio-837, ¶ 24, citing *Westerville v. Cunningham*, 15 Ohio St.2d 121, 239 N.E.2d 40 (1968), at paragraph one of the syllabus. *See also E. Cleveland v. Harris*, 8th Dist. Cuyahoga

No. 109404, 2021-Ohio-952, ¶ 27 (refusal to take a breath test without explanation is indicative of the defendant's fear of the test result and shows a consciousness of guilt).

{¶ 20} Jackson's arguments are overruled. This is not an exceptional case in which it can be concluded that a manifest injustice occurred. The jury did not lose its way in concluding that Jackson's convictions for the OVI and impeding traffic offenses were supported by the greater weight of the evidence presented at trial.

{¶ 21} The convictions are affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the municipal court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
SEAN C. GALLAGHER, JUDGE

EILEEN T. GALLAGHER, P.J., CONCURS;
EMANUELLA D. GROVES, J., DISSENTS (WITH SEPARATE OPINION)

EMANUELLA D. GROVES, J., DISSENTING:

{¶ 22} I respectfully concur in part and dissent in part. I write separately to address the majority's opinion finding that there was sufficient evidence to support the conviction for impeding traffic.

{¶ 23} Jackson was cited for violating Cleveland Heights Codified Ordinances ("CHCO") 333.04, which states:

> No person shall stop or operate a vehicle at such an unreasonably slow speed as to impede or block the normal and reasonable movement of traffic, except when stopping or reduced speed is necessary for safe operation or to comply with the law.

CHCO 333.04(a).

{¶ 24} "[A]n appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 273, 574 N.E.2d 492 (1991).

{¶ 25} The majority focuses on Jackson's briefing, which argues the evidence was insufficient because "it did not establish that his conduct impeded or blocked the normal and reasonable movement of traffic because the incident occurred just past midnight and 'there *were no vehicles* present' for his vehicle to impede or block." Majority opinion at ¶ 10. The majority argues that the responding officers' patrol cars were impeded, providing sufficient evidence to support the charge. I disagree.

{¶ 26} This court has previously addressed the state code, R.C. 4511.22(A), and found that the trier of fact is "required to consider whether the traffic in the area was moving normally and reasonably and whether the defendant impeded its flow." *Cleveland v. Dawson*, 8th Dist. Cuyahoga No. 71450, 1997 Ohio App. LEXIS 3201, at *16 (July 24, 1997). We determined that the relevant inquiry is how traffic was flowing at the time of the stop. *Id.* *See State v. Hagerty*, 11th Dist. Portage Nos. 2001-P-0083 and 2001-P-0084, 2002-Ohio-3379, ¶ 16 (where officer was the only person on the road and could have navigated safely around a slow-moving driver, the officer was not blocked or impeded under R.C. 4511.22); *State v. Bacher*, 170 Ohio App.3d 457, 2007-Ohio-727, 867 N.E.2d 864, ¶ 13 (1st Dist.) (finding that evidence did not support reasonable suspicion where the defendant was observed driving slowly late at night but was not impeding or blocking traffic); *State v. Bahen*, 2016-Ohio-7012, 76 N.E.3d 438, ¶ 25 (10th Dist.) (violation of R.C. 4511.22 requires a showing that the motorist impeded or blocked traffic.). The court in *Bahen* suggests that whether a police officer is impeded should be examined on a case-by-case basis. *Id.* at ¶ 26.

{¶ 27} The officers in this case were not acting as drivers in the "normal and reasonable movement of traffic." C.C.O. 333.04. They were present for the specific purpose of investigating Jackson's conduct. Additionally, the officers testified that they positioned themselves to prevent Jackson's car from moving. The evidence at trial indicated that there were cars in the area; however, no testimony was presented to establish that they were impeded by Jackson's vehicle.

{¶ 28} Accordingly, I would sustain appellant's second assignment of error and find the conviction for impeding traffic was based on insufficient evidence. Because there was insufficient evidence, I would also sustain appellant's third assignment of error challenging that conviction on the weight of the evidence.